UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARVEL MANUFACTURING CO. INC.,

      Plaintiff,

v.                                    Case No. 11-C-00961

KOBA INTERNET SALES, LLC,

      Defendant.

**DECISION AND ORDER**

Marvel Manufacturing Co., Inc., sued Koba Internet Sales, LLC, for (1) infringement of a federally registered trademark in violation of 15 U.S.C. §1114; (2) cybersquatting in violation of 15 U.S.C. §1125(d); and (3) unfair competition in violation of 15 U.S.C. §1125. (Compl., ECF No. 1, ¶ 1.) The claims are based upon the use by Koba of internet domain names that incorporate the Marvel's trademark to describe Koba's after-market parts business. Federal jurisdiction exists under 28 U.S.C. § 1331, and the case is before the Court on Koba's motion to dismiss for failure to state a claim and for lack of personal jurisdiction. For the reasons that follow, the Court concludes that personal jurisdiction is lacking and for that reason, Koba's motion for dismissal will be granted.

**BACKGROUND**

Marvel adopted the MARVEL trademark in 1905 for use in connection with its sales of sawing machines and parts therefore. (*Id.* ¶ 7.) The MARVEL trademark is widely recognized in the sawing industry as indicating plaintiff's sawing machines and parts, and has become one of the

most well known trademarks in the sawing industry. (*Id.*) Marvel owns United States Trademark Registration No. 207,685, registered in 1926, for the MARVEL trademark for use in connection with "hack sawing machines, band sawing machines, hack-saw blades, band-saw blades." (*Id.* ¶ 8.)

Koba is a Limited Liability Company having its headquarters in Houston, Texas. (*Id.* ¶ 5.) Koba operates a series of websites that provide information about how to obtain after-market parts that may be used in the service and repair of machines, such as the machines manufactured by Marvel. (Decl. of Christopher Luke, ECF No. 11-1, ¶ 11.) Koba is listed as the registrant of the following domain names (with registration dates):

- http://marvel8guides.com  (March 30, 2008);
- http://marvelbladeguides.com (December 22, 2006);
- http://marvelsaw.com (March 10, 2003);
- http://marvelsawparts.com (March 10, 2003);
- http://marvelsawrepair.com (December 8, 2004);
- http://marvelsawservice.com (December 4, 2008);
- http://marvelupperbandwheel.com (January 11, 2009);
- http://houstonmarvelsawrepair.com  (December 8, 2008) and
- http://houstonmarvelsawservice.com (December 8, 2008)

(Collectively referred herein as the "Koba websites"). (*Id.* ¶ 15.)

Koba identifies the Marvel machines for which it can provide after-market parts solely as a reference to the person visiting its websites. (*Id.* ¶ 12.) Koba does not market or attempt to sell Marvel's machines; solely after-market parts for use in their routine service and repair. (*Id.* ¶ 11.) Koba also does not ship any products to customers in Wisconsin or anywhere else. Instead, Koba

arranges for other companies to fulfill any orders that Koba receives. Koba's vendors are located in Houston, Texas, and Denver, Colorado. Koba has no vendors located in Wisconsin. (*Id.* ¶ 10.)

Seven of the websites referenced are passive in that they only provide information, and do not provide any ability for a customer to establish an account, enter contract, or conduct business of any type with Koba. (*Id.* ¶ 14.) Only two of the listed websites allow users to purchase after market parts: Koba's websites at http://marvelbladeguides.com and http://marvelsawparts.com are fully interactive websites that permit consumers to create an account using an email address or an account number and a password, to shop online by adding items to an electronic shopping cart and to check out and pay for purchases all while online. (*Id.* ¶ 15.) Neither interactive website has generated any long term, continuous shipments to Wisconsin. (*Id.* ¶¶ 16-17.) Specifically, in the eight years of its existence (registration occurred in 2003), http://marvelsawparts.com has received less than five thousand dollars ($5,000.00) in gross orders that requested shipment of parts to a location in Wisconsin. (*Id.* ¶ 17.) In the five years since its inception (registration occurred in 2006), http://marvelbladeguides.com has received one order totaling one-hundred sixty-four dollars ($164.00) that requested shipment to Wisconsin. (*Id.* ¶ 16.)

Each website complained of by Marvel was registered by Koba from its offices in Houston, Texas. (*Id.* ¶ 13.) The registrant and contact information for each website lists Koba's contact information as Houston, Texas. (*Id.*) Koba is neither a licensee of Marvel nor an authorized dealer or distributor of Marvel parts. (Compl., ECF No. 1, ¶ 23.) The parts advertised for sale on the domain names are of the same type and are intended for the same purpose and the same class of purchasers as the genuine parts offered for sale by Marvel and its authorized distributors. (*Id.*)

3

Koba does not have any locations, offices, or other business locations in Wisconsin. (Decl. of Christopher Luke, ECF No. 11-1, ¶¶ 4,10.) Koba does not have any employees or agents in Wisconsin nor does it own or possess real property or personal property in Wisconsin. (*Id.* ¶¶ 4-5.) Koba does not make sales calls on potential clients or customers in Wisconsin nor does Koba target its advertising or marketing to recipients in Wisconsin. (*Id.* ¶¶ 7-8.) Koba does not purchase any advertising in any form of media whether print, radio, or television, in any local market or city in Wisconsin. (*Id.* ¶ 8.)

## ANALYSIS

### A. Personal Jurisdiction

A federal court has personal jurisdiction only if a court of the state in which the federal court sits would have jurisdiction. *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir.1986). This rule applies not only in diversity but also in federal question cases, unless the federal statute at issue permits nationwide service or the defendant is not subject to personal jurisdiction in any state in the United States. Fed. R. Civ. P. 4(k); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201-02 (7th Cir. 1997). Neither of the exceptions apply to this case. Nationwide service of process is not authorized under any of the statutes at issue in this case, and Koba is subject to personal jurisdiction elsewhere.

Under Wisconsin law, determining whether personal jurisdiction may be exercised requires a two-step inquiry. First, the court must determine whether defendants are subject to jurisdiction under Wisconsin's long-arm statute, Wis. Stat. §801.05. *Kopke v. A. Hartrodt, S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662. Second, if the statutory requirements are satisfied, the court

must decide whether the exercise of jurisdiction comports with the requirements of due process. *Id.* Personal jurisdiction may be exercised only if both requirements are met: the statute must authorize the exercise of jurisdiction and the exercise of jurisdiction must not offend due process.

Personal jurisdiction may be either specific or general. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). General jurisdiction exists only when a party has "continuous and systematic" contacts with the forum state, while specific jurisdiction is established when a lawsuit "arises out of" or is "related to" a party's minimum contacts in the forum state. *Id.* For both types of personal jurisdiction, the court's due process inquiry involves two steps. First, the court determines whether the defendant "purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Next, the court considers those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The critical inquiry is whether the defendant has "purposely availed" itself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws, such that the defendant should reasonably anticipate being haled into court there. *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002) (citing *Burger King*, 471 U.S. at 474-75). Marvel, in this case, concedes that general jurisdiction does not exist. (Pl.'s Br., ECF No. 13, 3.) Therefore, the question the court must decide is whether specific jurisdiction exists. To decide that issue, I turn first to Wisconsin's long-arm statute.

**1. Long-arm statute**

Marvel claims that Koba's solicitation activities fall under the local injury; foreign act provision of Wisconsin's long arm statute. (*Id.* at 4.) That section states:

5

> (4) LOCAL INJURY; FOREIGN ACT. In any action claiming injury to person or property within this state arising out of an act or omission outside of this state by defendant, provided in addition that at the time of the injury, either:
>
> (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
>
> (b) Products, materials or things processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

Wis. Stat. §801.05(4). Thus, for personal jurisdiction to exist under this section of the statute, the plaintiff must first show an injury to person or property within the State arising out of an act or omission by the defendant outside of the state. This section applies to tortious injuries and is not applicable to losses resulting from an alleged breach of contract. *Nagel v. Crain Cutter Co.*, 50 Wis.2d 638, 643, 184 N.W.2d 876, 878 (1971).

There is no dispute that Koba's use of Marvel's trademark in its various domain names constitutes a foreign act by Koba. Koba contends, however, that Marvel is unable to show local injury. Marvel alleges that Koba's "infringing activities will cause a loss of sales of genuine MARVEL brand replacement parts and sawing machines." (Compl., ECF No. 1, ¶ 18.) Marvel suggests that because Marvel is located in Wisconsin, the loss of income would occur there. But a loss of income a business has not yet received is not injury to person or property. A business cannot suffer injury to property it has never received. Marvel also alleges, however, that Koba has infringed its trademark. (*Id.* ¶ 37.) A trademark is a form of property, intellectual property to be precise, and infringement of a trademark constitutes injury to such property. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd.*, 34 F.3d 410, 411 (7th Cir. 1994). Moreover, if a trademark is impaired, the injury is generally felt where the owner of the trademark is located. *Id.* at 412 ("The Indianapolis Colts use the trademarks they seek to defend in this suit mainly in

Indiana. If the trademarks are impaired, as the suit alleges, the injury will be felt mainly in Indiana. By choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana."). Under the foreign act/local injury provision of Wisconsin's long-arm statute, there is no requirement that the injury be felt mainly in Wisconsin; only that there be a local injury. Since Marvel is located in Wisconsin, I conclude that this first element of the statute is met.

But this does not end the inquiry. In order to satisfy the requirements of section 801.05(4), Marvel must also demonstrate either that (1) solicitation or service activities were carried on within the state by Koba or on its behalf, or (2) that products, materials or things processed, serviced, or manufactured by Koba were used or consumed within this state in the ordinary course of trade. Marvel contends that Koba's use of two interactive websites constitute solicitation under the statute because they are open to individuals in Wisconsin. I agree.

"Wisconsin courts have equated 'solicitation' with advertising, promoting, or selling products or services." *Fried v. Surrey Vacation Resorts, Inc.*, No. 08–cv–534, 2009 WL 585964, *3 (W.D. Wis. March 6, 2009)(unpublished decision) (citing *Fields v. Peyer*, 75 Wis.2d 644, 653, 250 N.W.2d 311 (1977) By maintaining an interactive website that can be accessed in Wisconsin, Koba enables Wisconsin residents to view its advertisements, promotions and sales information on their computer screen in their own homes. Based on the Wisconsin sales generated through its interactive websites, it is reasonable to infer that Koba's advertisements and sales solicitations have appeared on computer screens in Wisconsin homes and/or businesses. The digital display of such information in Wisconsin constitutes solicitation activities carried on within the state on Koba's behalf. The requirements of section 801.05(4)(a) are therefore met.

## 2. Due Process

Having found that Wisconsin's long-arm statute allows the exercise of personal jurisdiction over Koba, I now turn to the question of whether the exercise of such jurisdiction would comport with the requirements of due process. The Due Process Clause of the Fourteenth Amendment limits when a state may assert in personam jurisdiction over nonresident individuals and corporations. *Pennoyer v. Neff*, 95 U.S. 714, 733 (1878). In specific jurisdiction cases, such as this, "the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). A defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Contacts with the forum state that are "random, fortuitous, or attenuated" are not sufficient, however. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). To support the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the state must reflect the fact that it has "purposefully avail[ed] itself of the privilege of conducting activities" there. *Id.* at 474-75. This requirement brings a degree of predictability to the system and "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

> Potential defendants should have some control over-and certainly should not be surprised by-the jurisdictional consequences of their actions. Thus, when conducting business with a forum in one context, potential defendants should not have to wonder whether some aggregation of other past and future forum contacts will render them liable to suit there. Unless their contacts are continuous and

8

systematic enough to rise to the level of general jurisdiction, individuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another.

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997).

Applying these principles in the internet context, the Seventh Circuit has held that it is not enough that a defendant operates an interactive website that is accessible in the forum state. *See be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a "highly interactive" website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."). In *be2LLC*, the New Jersey defendant allegedly moved his matchmaking service to a new website and deliberately chose to use an existing domain address and design that were confusingly similar to the Illinois plaintiff's "with the intention of misleading consumers." 642 F.3d at 556. The plaintiff sued for trademark infringement in Illinois and obtained a judgment when the defendant defaulted. The defendant moved to vacate the judgment for lack of personal jurisdiction, but the district court denied the motion. The Seventh Circuit reversed. Beyond simply operating an interactive website that is accessible from the forum state, the Court held, a defendant must in some way target the forum state's market in order to satisfy the requirements of due process. *Id.* at 558-59. The Court found no evidence that the defendant had targeted or exploited the Illinois market, noting that only twenty individuals who created dating profiles on the website had Illinois addresses.

Marvel argues that Koba has sufficient minimum contacts with Wisconsin to comport with the "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984). Under the effects doctrine, a defendant has sufficient minimum contacts with due process where, "(1) the defendant's intentional tortuous actions (2) expressly aimed at the forum state (3) causes harm to the plaintiff

in the forum state, of which the defendant knows likely to be suffered." *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 835 (N.D. Ill. 2000). Marvel notes that *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994), held that injury in a trademark case occurs where the plaintiff lives. But *Indianapolis Colts* looked to more than the residence of the trademark owner in finding personal jurisdiction. The Court noted that the defendant planned to broadcast its games in the Indianapolis market. *Id.* at 412. And subsequent cases have clarified that the mere fact that a trademark owner resides in a state is not a sufficient basis to confer personal jurisdiction over the defendants accused of infringing. In *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, for example, the Court held that merely alleging an intentional tort and assuming damages in the forum state were not enough to satisfy personal jurisdiction. 623 F.3d 440, 445-446 (7th Cir. 2010). The Court expressly rejected the argument that maintaining a website satisfies the "express aiming" requirement:

> Mobile/Chicago's evidence that Mobile/Houston took express aim at Illinois is inadequate. Mobile/Chicago first contends that we should infer express aiming at Illinois from the fact that Mobile/Houston operates a website whose domain name is similar to Mobile/Chicago's trademark. We disagree. *A plaintiff cannot satisfy the Calder standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website.*

*Id.* at 446 (italics added). The inclusion of Marvel's name on the website is simply insufficient to satisfy the "effects" test. *See Hy Cite Corp. v. Badbusinessbureau.com LLC*, 297 F. Supp. 2d 1154, 1166 (W.D. Wis. 2004) ("I agree with the majority of courts that simply placing the name of trademark on a website is not enough to show that a defendant has intentionally targeted the forum state."). For all of these reasons, the effects test is not satisfied.

Marvel also argues that the minimum contacts requirement is met under the sliding scale test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Penn. 1997). (Pl's Br., ECF No. 13, 6-7.) Under the sliding scale test, cases dealing with internet-based claims fall into one of three categories: (1) cases where a defendant actively does business over the internet; (2) cases where a defendant's internet presence is only passive, i.e., where the defendant has done no more than post information on a website that happens to be accessible also to users in remote jurisdictions; and (3) cases where the website at issue is interactive, allowing for an exchange of information between internet users and the website host or its affiliates. *See Zippo Mfg. Co.*, 952 F. Supp. at 1124. Personal jurisdiction is proper if the website's activities fall in either the first or the third category. *Id.* Marvel argues that the interactivity of the two websites satisfy the sliding scale test.

But the sliding scale test has been rejected in this Circuit. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758-59 (7th Cir. 2010). Moreover, even if this approach had not been rejected by the Seventh Circuit, a company's use of a website, even an interactive website, does not demonstrate purposeful availment or targeting of Wisconsin. The interactivity of a website may only be taken into account in the purposeful availment context if it shows that the defendant targeted the forum state as opposed to all others:

> . . . a finding that a defendant uses its website to engage in repeated commercial transactions may support the exercise of personal jurisdiction, so long as there is a corresponding finding that the defendant is *expressly targeting residents of the forum state and not just making itself accessible to everyone regardless of location*.

*Hy Cite*, 297 F. Supp. at 1161 (italics added).

The ultimate question remains the same – whether the defendant's contacts with the state are of such a quality and nature such that it could reasonably expect to be haled into the courts of the forum state. Here, as the facts show, Koba is not expressly targeting residents from Wisconsin, nor are their contacts of such a "quality and nature" that they could reasonably expect to brought before the courts of Wisconsin. Instead they are simply making themselves accessible to everyone regardless of location, with insubstantial contact with Wisconsin, and should not be deemed to have purposely availed themselves to Wisconsin. Koba's relatively low Wisconsin sales figures, which are not even tied to the injury alleged, are insufficient under any test to satisfy the requirements of due process.

Accordingly and for the reasons set forth above, the Court lacks personal jurisdiction over the defendant. Korba's motion to dismiss is granted, and the Clerk shall enter judgment dismissing the case without prejudice.

**SO ORDERED** this   26th   day of June, 2012.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
